ADELE APPLEBAUM, Respondent-Appellant, v ALAN APPLE-BAUM, Appellant-Respondent.

First Department, December 22, 1988

## APPEARANCES OF COUNSEL

*Joel S. Stern* of counsel *(Stern, Fixler, Wiener & Levy,* attorneys), for respondent-appellant.

*Ira Richard Bennett* attorney for appellant-respondent.

**OPINION OF THE COURT**

SULLIVAN, J.

On these cross appeals from a judgment of divorce one of the issues raised by the wife is whether the court properly determined that a cooperative apartment owned solely by her and used as her principal residence is marital property. We conclude that the circumstances of the purchase and the husband's abandonment of any rights he had in the apartment militate against such a finding, and thus award the apartment exclusively to the wife.

The parties were married in 1961, and, beginning in 1968, resided in a three-bedroom rent-controlled apartment at 200 West 86th Street. The husband left the marital home in 1980, never to return. Several months later, he took his own apartment, where he has resided ever since. The wife has continued to reside in the West 86th Street apartment with their daughter. Since the separation the husband has not paid any rent on the apartment, although he contributed $160 a week for the support of their daughter (the parties' other child, a son, is emancipated).

In 1985, more than four years after the separation, the wife purchased the shares of stock allocated to the apartment during a conversion of the building to cooperative ownership. She raised the purchase price of $130,000 by borrowing $100,000 from a friend at 12% interest, secured by a pledge of the cooperative stock; borrowing another $17,000 from her brother at 9% interest, collateralized by other stock she owned; and using $2,000 of her daughter's money and $9,000 she inherited from her father. The balance apparently came from her own savings.

As a condition of the purchase the sponsor required a signed release executed by the husband of all of his interest in the apartment, including any right he might have to purchase the shares allocated to it. In that same instrument, the husband preserved whatever rights he might have in the apartment as marital property subject to equitable distribution. At trial he could not recall whether he ever expressed any desire to join in the purchase of the apartment, but when queried as to whether he asked to purchase a one-half interest, he replied, "to the best of my recollection, I did not because I did not have the money at at the time". The wife testified that the husband made no effort to purchase an interest in the apartment, although she had no objection to his purchase of all the

shares allocated to the apartment, or even a one-half interest, as long as she and her daughter could continue in occupancy.

In a detailed posttrial opinion addressing the various issues raised by the parties, the court ruled that the apartment was marital property as to which the wife was entitled to exclusive possession. In the event the husband, within a time period specified by the court, paid his share of the "insider's price," as well as one half of the closing costs and interest on the loans, he was entitled to an equal share of the proceeds from a sale of the apartment. If the husband failed to make such payments, the apartment was to be the exclusive property of the wife.

Essential to any determination as to whether the apartment is marital property is an appreciation of the husband's interest, if any, in the premises. Even though the sponsor required a signed release from him before accepting the wife's subscription offer, he was not statutorily entitled to purchase the shares allocated to the apartment at the insider price, since he was not a "tenant in occupancy" at the time the offering plan was accepted for filing. *(De Kovessey v Coronet Props. Co.,* 69 NY2d 448; *see,* General Business Law § 352-eeee; *see also, Consolidated Edison Co. v 10 W. 66th St. Corp.,* 61 NY2d 341; *Cooper v 140 E. Assocs.,* 27 NY2d 115.) As the Court of Appeals has noted, the " 'tenant in occupancy' must be in actual possession and occupying the unit at the time the conversion plan is accepted for filing". *(De Kovessey v Coronet Props. Co., supra,* at 457.) Here, the husband had relocated to another apartment in circumstances evincing a clear relinquishment of his rights to the apartment. He had ceased making any rent payments and had not resided there for at least three years before the distribution of the offering plan. Indeed, the "red herring" prospectus had not even been distributed by September 1982, when this action was commenced.

Of course, the husband's ineligibility to purchase as a "tenant in occupancy" does not necessarily mean he is without any interest in the apartment for purposes of equitable distribution, since a residence acquired after the marriage of the parties generally qualifies as marital property, and would normally be subject to distribution. While the overriding consideration in the division of property in the dissolution of a marriage is an equitable distribution which takes into account various statutory factors, certain property is deemed to be separate property and thus, generally not subject to distribution. *(See,* Domestic Relations Law § 236 [B] [1] [d]; [5] [d].)

Marital property, as defined by the statute, for example, does not include property acquired after the execution of a separation agreement or the commencement of a matrimonial action. (Domestic Relations Law § 236 [B] [1] [c].)

The statute also provides, "Marital property shall be distributed equitably between the parties, considering the circumstances of the case and of the respective parties." (Domestic Relations Law § 236 [B] [5] [c].) "[T]here is no requirement that the distribution of each item of marital property be on an equal or 50-50 basis". *(Arvantides v Arvantides,* 64 NY2d 1033, 1034.) The thrust of the statute is for equitable, not equal, distribution. In this case the parties had been separated for over four years, although not formally, when the wife purchased the apartment. Indeed, the marriage had irretrievably broken down. During the interim the husband had not paid any rent for the apartment. He declined to participate in any way in its purchase, thereby compelling the wife to use her own funds and sources exclusively. Equitable considerations dictate that he not be permitted to reap the benefits of her foresight and entrepreneurship, especially in light of not only his refusal to contribute to the purchase, but failure to contribute to the upkeep of the apartment after he left it. All other marital property, to the acquisition of which the husband had contributed, is being divided on a more or less even basis. Only the unique circumstance of this purchase compels us, in an equitable apportionment of the parties' assets, to reject the husband's claim to an interest in the apartment.

We have reviewed the other issues on the appeal and cross appeal, and find them to be without merit.

Accordingly, the judgment of the Supreme Court, New York County (Harold Baer, Jr., J.), entered May 24, 1988, should be modified, on the law and on the facts, and in the exercise of discretion, to the extent of vacating the provision adjudging that the cooperative apartment is marital property and the requirement that the proceeds of any sale of said apartment be divided equally; adjudging that the apartment is the separate property of the wife and, except as thus modified, affirmed, without costs or disbursements.

MILONAS, KASSAL and SMITH, JJ., concur.

Judgment, Supreme Court, New York County, entered on May 24, 1988, unanimously modified, on the law and on the facts, and in the exercise of discretion, to the extent of vacating the provision adjudging that the cooperative apart-

ment is marital property and the requirement that the proceeds of any sale of said apartment be divided equally; adjudging that the apartment is the separate property of the wife and, except as thus modified, affirmed, without costs and without disbursements.